ATTORNEY DISCIPLINARY PROCEEDING PER CURIAM 11This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Robert B. Purser, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Purser, 13-0875 (La. 4/24/13), 117 So.3d 1246. UNDERLYING FACTS Count I—The Amerisafe Matter Between 2003 and 2012, respondent represented insurance companies Amerisafe, Inc. and American Interstate Insurance Company (collectively referred to as “Am-erisafe”) in various subrogation claims against third parties. In December 2012, Amerisafe filed a disciplinary complaint against. respondent, alleging that he settled three separate claims on Amerisafe’s behalf and failed to remit the funds to Amerisafe. Specifically, Amerisafe alleged the following: (1) Respondent settled a subrogation claim on Amerisafe’s behalf in the amount of $25,000, and Amerisafe never received the funds despite respondent indicating that he placed a check in the mail; (2) Amerisafe resolved a claim by accepting a $40,000 settlement. Respondent indicated that he placed the funds into his client trust account, but Amerisafe never received the funds despite repeated requests for respondent to remit same; and (3) Amerisafe agreed to accept $35,000 in satisfaction of a lien. When Amerisafe repeatedly demanded that respondent remit the funds, he informed Amerisafe that |ahe was holding the funds in his client trust account. In response to the complaint, respondent denied any misconduct and indicated that he sent Amerisafe the funds shortly after receiving the complaint. However, Amerisafe indicated it only received $25,000 in connection with one claim and that the check was returned because of a stop payment on it. Amerisafe filed a lawsuit against respondent to recover the above-mentioned funds and, through discovery, confirmed that respondent deposited the funds into his client trust account. The lawsuit resulted in a default judgment against respondent in the approximate amount of $120,000, which included the subrogation recovery-amounts and attorney’s fees. Amerisafe has not yet been able to collect any of the funds due under the judgment. Respondent further failed to inform Am-erisafe of a judgment rendered against it in a case he was handling on its behalf. He then missed oral argument 'in the case when it was before the Louisiana Third Circuit Court of Appeal on November 2, 2011. The ODC requested that respondent provide documentation related to his client trust account for the period between January 2011 and March 13, 2013. Respondent failed to provide the requested documéntation. The ODC alleged that respondent’s conduct violated the following provisions of. the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.4(a) (violation of the Rules of Professional .Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or .misrepresentation). | nCount II—The Bower Matter Brenda Ann Bower hired respondent to represent her in a lawsuit against her former boyfriend to-obtain her share of Certificates of Deposit that she and her former boyfriend had purchased together. Respondent took the case on a contingency fee basis, and after a trial, Ms. Bower was awarded $177,503.82. Respondent received the funds on Ms, Bower’s behalf in February and March 2012. He took his attorney’s fees and informed Ms. Bower he was holding the remaining funds in his client trust account until she decided how she wanted to proceed. Ms. Bower wanted to purchase a mobile home but was unable to obtain financing. While she could have used the proceeds from the judgment to purchase the mobile home, respondent convinced her to let him finance the purchase instead. Respondent obtained a loan and purchased the mobile home for Ms. Bower but put it in his name. Ms. Bower,then instructed respondent to put her portion of the proceeds in a trust, but respondent failed to do so. Therefore, on December 19, 2012, Ms. Bower sent a letter to respondent, via certified mail, requesting information about the whereabouts of her funds. Respondent received the letter on December 21, 2012 but did not provide Ms. Bower with the requested information. In January 2013, Ms. Bower filed a disciplinary complaint against respondent. Respondent provided the ODC with a written response on March 25, 2013, but he failed to appear for a sworn statement scheduled for April 18, 2013 and failed to produce subpoenaed documents, On March 6, 2013, respondent sent Ms. Bower a check in the amount of $47,312.13. On March 23, 2013, respondent sent Ms. Bower another check in the amount of $52,000. Ms. Bower reported that both checks were returned due to insufficient funds in the accounts. Ms. Bower also provided the ODC with copies of text messages in which respondent made repeated promises to provide her with |4her funds, which promises he failed to fulfill. Eventually, Ms. Bower filed a claim with and received $25,000 from the Louisiana State Bar Association’s (“LSBA”) Client Assistance Fund. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 11.4, 1.5(c) (contingency fee agreements), 1.8(a) (a lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possesso-ry, security or other pecuniary interest adverse to a client), 8.4(a), 8.4(b), and 8.4(c). Count III—The Client Trust Account Overdraft Matter On February 15,2013, the ODC received notice from American Bank and Trust Company that an overdraft occurred in respondent’s client trust account when a $54,116 item was presented for payment and the account balance was not sufficient to pay the item. The bank returned the item due to insufficient funds in the account, leaving the account with a positive balance. The bank’s notice to the ODC, also indicated that the bank closed the account on February 11,2013. Respondent failed to register this particular client trust account with the LSBA, as required. On February 22, 2013, the ODC sent a letter, via certified mail, to respondent requesting a written explanation for the overdraft and copies of documents related to the client trust account for the previous six months. Despite receiving the letter, respondent never provided the ODC with the requested information. As such, the ODC subpoenaed the records from American Bank and Trust Company. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a), 8.4(b), and 8.4(c). | ¿Count IV—The Elder/Sikora Matter In May 2011, Joseph Elder and Cherie Sikora hired respondent to defend them in a civil lawsuit brought by the buyer of their former home. They initially paid respondent a $2,500 fee. In February 2013, respondent informed Mr. Elder and Ms. Sikora that he needed an additional $2,500 to proceed with the case. They paid him the additional $2,500, and shortly thereafter, respondent was interimly suspended from the practice of law. Respondent did not notify Mr. Elder and Ms. Sikora of his interim suspension. Upon learning of the interim suspension from another source, Mr. Elder and Ms: Sikora filed a disciplinary complaint against respondent. Their complaint alleged that respondent did nothing to move their case to conclusion. They also alleged that depositions were set several times but always continued, and they would only find out about the continuances by calling respondent’s secretary. Respondent never provided a written response to the complaint but did appear to provide the ODC with a sworn statement. Mr.' Elder filed a claim with and received $4,500 from the Client Assistance Fund. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,' 1.4,1.5(b) (the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client), 1.5(f)(5) (failure to refund an unearned fee), and 8.4(a). In addition, the ODC alleged that respondent violated Supreme' Court Rule XIX, § 26(A) by failing to notify the appropriate parties of his interim suspension. Count.V—The Comeaux Matter In early 2013, Dori Comeaux hired respondent to represent her in a child support and custody matter. Ms. Comeaux paid respondent a $3,500 retainer, which ^respondent would bill against-at a rate of $150 perhour. They met three times about Ms. Comeaux’s legal matter, and respondent attended one hearing before a hearing officer with Ms. Comeaux. Thereafter, respondent would not return Ms. Co-meaux’s telephone calls or communicate with her. Eventually, Ms. Comeaux learned that respondent was interimly suspended from the practice of law and questioned respondent about it. Respondent assured her that he could continue to represent her and made an appointment with her for June 20, 2013. However, he failed to show for the appointment and has since failed to refund any of the unearned portion of the fee Ms. Comeaux paid. Eventually, Ms. Comeaux hired another attorney to complete the matter. She paid the new attorney $500, and he was able to complete the matter in about two weeks. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.4(a). In addition, the ODC alleged that respondent violated Rule XIX, § 26(A). Count VI—The Briley Matter In February 2013, Kasie Briley hired respondent to defend her against DWI charges. Ms. Briley paid respondent a $3,500 flat fee for the representation. Ms. Briley had a court date scheduled for June 13, 2013. She spoke to respondent on June 11, 2013, and he did not inform her he was on interim suspension. Respondent failed to appear for the June 13, 2013 court date. When Ms. Briley’s mother contacted respondent later that morning, he indicated he would arrange for another attorney to represent Ms. Briley. The other attorney appeared and obtained a continuance on Ms. Briley’s behalf. Ms. Briley later learned that respondent had been placed on interim suspension. After learning this, she contacted respondent via text messages. Respondent informed her he would have the DWI charges dismissed. However, Ms. [7Briley ultimately had to obtain a court-appointed attorney to represent her. She requested a refund and her client file from respondent, but respondent has not returned the file or refunded the fee. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16(d) (obligations upon termination of the representation), and 8.4(a). In addition, the ODC alleged that respondent violated Rule XIX, § 26(A). Count VII—The Unauthorized, Practice of Law Matter The ODC received information that respondent continued to practice law following his April 24, 2013 interim suspension by thereafter continuing to represent Dr. Lionel Mayer and bill for his time. The ODC opened an investigation and, on August 15, 2013, sent respondent notice of the investigation, requesting a written response. Respondent failed to provide a written response but did provide the ODC with a sworn statement on December 10, 2013. On October 21, 2013, the ODC received notice from Peter Caviness, the curator appointed to inventory respondent’s files after he was placed on interim suspension, that respondent was continuing to practice law and that he converted funds owed to his client, Jennifer Durousseau. Despite receiving notice of Mr. Caviness’ complaint, respondent did not provide a written response. He did, however, provide the ODC with a sworn statement on December 10, 2013. According to respondent, Ms. Durous-seau did not want to interact with her ex-husband. Therefore, her ex-husband sent community property installment payments owed to her directly to respondent, who was, in turn, supposed to forward the funds to her. Documentation from Mr. Ca-viness indicated that respondent received seven payments totaling $7,000 on Ms. Du-rousseau’s behalf as of August 18, 2013. Respondent received five of those payments after he was placed on interim | ^suspension, and he failed to forward the $7,000 to Ms. Durousseau. Ms. Durousseau filed a claim with and received $5,000 from the Client Assistance Fund. The ODC alleged that respondent’s conduct violated the following provisions, of the Rules of Professional Conduct: Rulés 5.5(a) (engaging in the unauthorized practice of law), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), and 8.4(c). In addition, the ODC alleged that respondent violated Rule XIX, § 26(A).. Count VIII—The Cates Matter Jennifer Cates hired respondent to defend her against a DWI charge and to process an expungement of her DWI arrest from her criminal record. Respondent represented Ms. Cates during the DWI prosecution, and she was ultimately placed on probation. In February 2013, Ms. Cates paid respondent $2,500 for the expungement. Respondent informed Ms. Cates that he had filed for the expungement after her probation ended in May 2013 when, in fact; he never did any legal work on the expungement. Nevertheless, respondent did not refund any of the attorney’s fees he collected for the expungement. Ms. Cates filed a claim with and received $2,500 from the Client Assistance Fund. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, 1.5(f)(5), 1.16(d), and 8.4(a). In addition, the ODC alleged that respondent violated Rule XIX, § 26(A). Count IX—The Gordon Matter Herbert Gordon hired respondent to open and finalize a succession, and the two met to discuss the succession on July 24, 2013. Mr. Gordon paid respondent a $3,000 fee on August 22,2013. | ¡According to respondent, he performed the bulk of the legal work for the succession before he was interimly suspended from the practice of law, but he could not conclude the succession because of his interim suspension. He also claimed to have informed Mr. Gordon of his interim suspension. According to Mr. Gordon, his brother informed him of respondent’s interim suspension, and when he e-mailed respondent about it, respondent confirmed he was on interim suspension. Respondent returned Mr. Gordon’s file to him, but he did not refund any of the $3,000 fee Mr. Gordon paid. Mr. Gordon filed a claim with and received $2,500 from the Client Assistance Fund. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, 1.5(f)(5), 1.16(d), 5.5(a), 8.4(a), and 8.4(c). In addition, the ODC alleged that respondent violated Rule XIX, § 26(A). Count X—The Thomas Matter In 2008, Ethel Thomas hired respondent to handle a community property matter, paying him $1,500. In February 2014, Ms. Thomas filed a disciplinary complaint against respondent because the community property matter was still not resolved. She also indicated that respondent never informed her of his interim suspension. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, 1.5(f)(5), 1.16(d), 8.4(a), and 8.4(c). In addition, the ODC alleged that respondent violated Rule XIX, § 26(A). DISCIPLINARY PROCEEDINGS In November 2015, the ODC filed formal charges against respondent. The ODC filed amended formal charges in June 2016. Respondent filed an answer to both the initial set of formal charges and the amended formal charges, essentially | ^denying any misconduct. The matter then proceeded to a formal hearing on the merits. Formal Hearing The hearing committee conducted the formal hearing on'September 27, 2016. Respondent did not appear and was not represented by counsel. The ODC introduced documentary evidence and called several witnesses to testify before the committee. Hearing Committee Report After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings: Count I—The Amerisafe Matter—The committee determined that respondent received three subrogation recovery checks on Amerisafe’s behalf and deposited them into his client trust account. Respondent neither remitted or disbursed those funds to Amerisafe nor informed Amerisafé he was holding the funds; the committee determined this conduct was intentional. Furthermore, respondent did not inform Amerisafe that a judgment had been rendered against it in a case he was handling on its behalf;' in the related appeal, respondent failed to appear for a scheduled hearing before the Third Circuit Court of Appeal in November 2011. Respondent’s conduct caused actual harm to Amerisafe by depriving it of its subrogation recovery funds, by failing to .inform Amerisafe of a judgment rendered against it, and by failing to appear for the appellate argument on that judgment. Count II—The Bower Matter—The committee determined that respondent obtained a judgment in favor, of Ms. Bower, collected funds in satisfaction of the judgment, and then intentionally failed to disburse Ms. Bower’s portion of the funds. Respondent also failed to indicate how much money he kept as his attorney’s fees. InThe committee further determined that respondent engaged in, a pattern of failing to keep Ms. Bower informed, repeatedly failed to account for or disburse the settlement funds, knowingly entered into a business transaction with Ms. Bower, which was adverse to her, without disclosing the actual or potential conflict of interest inherent in the transaction, and intentionally and repeatedly misrepresented the status and availability of Ms. Bower’s funds. According to the committee, respondent acted intentionally and caused actual harm to Ms. Bower by depriving her of at least $145,000 ,of the settlement funds to which she was entitled. Count III—The Client Trust Account Overdraft Matter—The, committee determined that respondent issued checks from his client trust account that were dishonored by the bank due to insufficient funds in the account. Count IV—-The • Elder/Sikora Matter— The committee- determined respondent neglected Mr. Elder and Ms. Sikora’s legal matter and failed to communicate with them. He failed to. communicate the scope of the representation and the basis of the legal fee. He also failed to account for the fees after his clients specifically requested that he do so and failed to refund the unearned fees. Additionally, he failed to notify his clients of his interim suspension. The committee determined respondent’s failure to account for the fees was intentional, and his conduct caused actual harm to his clients. Count V—The Comeaux Matter—The committee determined respondent neglected Ms. Comeaux’s legal matter, failed to communicate with her, failed to refund the' unearned portion of the fee paid by Ms. Comeaux, and failed to notify her of his interim suspension. The committee also determined respondent acted intentionally by continuing to assure Ms. Comeaux that he could represent her following his interim suspension and by refusing to refund the unearned fee. Count VI—The Briley Matter—The committee determined respondent neglected Ms. Briley’s legal matter, failed to communicate with her, and failed to | ^refund the unearned portion of the fee. Respondent also failed to return Ms. Briley’s file to her, failed to protect her interests upon termination of the representation, and failed to notify her of his interim suspension. Count VII—The Unauthorized Practice of Law Matter—The committee determined that respondent has continued to practice law since being placed on interim suspension on April 24, 2013. In particular, the record reflects that respondent continued to offer legal advice and continued to actively represent Dr. Lionel Maya’, Jennifer Cates, Herbert Gordon, Trey Elder, Cherie Sikora, Dori Comeaux, and Kasie Briley after the date of his interim suspension. Additionally, the record reflects that respondent accepted legal fees in connection with Dr. Mayer’s legal matter but performed no legal work except to render preliminary legal advice during the time he was on interim suspension. The committee further determined that respondent’s conduct was intentional and caused actual harm. Count VIII—The Cates Matter—The committee determined respondent failed to perform any legal services for which he was paid. Respondent also failed to keep Ms. Cates reasonably informed about the status of her legal matter and failed to inform her of his interim suspension. Respondent then failed to refund any of the fee he collected. Count IX—-The Gordon Matter—The committee determined respondent agreed' to handle Mr. Gordon’s legal matter after being placed on interim suspension. Respondent also failed to inform Mr. Gordon of his interim suspension, failed, to return Mr. Gordon’s file, and failed to refund the legal fee. The committee determined that respondent’s conduct was intentional and caused actual harm to Mr. Gordon. Count X—The Thomas Matter—The committee determined that respondent neglected Ms. Thomas’ legal matter and failed to' communicate with her. | ^Respondent also failed to account for the fee paid by Ms. Thomas and failed to notify her of his interim suspension. Based on these facts, the committee determined respondent violated Rules 1.3, 1.4, 1.5(c), 1.5(f)(5), 1.8(a), 1.16(d), 5.5(a), and 8.4(c) of the Rules of Professional •Conduct. The committee also determined that respondent violated Supreme Court Rule XIX, § 26(A). The committee then determined that respondent intentionally Violated duties owed to his clients. By engaging in a pattern and practice of intentionally misappropriating and converting client funds, he caused actual harm to his clients. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction is disbarment. In aggravation, the committee found'the following to be present: a pattern of misconduct, substantial experience in the practice of law (admitted 1990), indifference to making restitution, and “continued acceptance of engagements after having been placed on interim suspension.” The only mitigating factor found by the. committee was the absence of a prior disciplinary record. Under these circumstances, the committee recommended respondent be permanently disbarred; Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation. Respondent, however, filed a motion for continuance of oral argument before the disciplinary-board, citing his recent employment in Carlsbad, New Mexico. Respondent requested a continuance until the end of July 2017 when he would have accrued vacation time after six months of employment. In an order dated February 15, 2017, the board panel chair granted respondent’s motion but continued oral argument only until May 18, 2017. Respondent did not appear for oral argument before the board. | uDisciplinary Board Recommendation After review, the disciplinary board determined that the hearing committee’s factual findings do not appear to be manifestly erroneous and are supported by the record, with three exceptions. First, in the Bower matter, the committee found that respondent deprived Ms. Bower of at least $145,000. However, the board noted that Ms. Bower testified respondent’s fee was a one-third contingency fee. One-third of $177,503.82 is $58,576.26, which means Ms. Bower should have received $118,927.56 from respondent. Since she received no funds from respondent, the board determined he converted $118,927.56 of her funds. Second, in the Client Trust Account Overdraft matter, the committee made no specific findings other than to state that respondent had overdrawn his account. The board found that respondent deposited a $53,733 ■ check into his client trust account on December 11, 2012. This check was for “Stephen C. Lazaro.” Between December 11, 2012 and December 20, 2012, respondent issued $52,500 worth of checks to “Purser Law Firm.” On January 29, 2013, respondent issued a $54,116 check for the “Lazaro Settlement/Estate.” At that point, the client trust account had a balance of $83, and the $54,116 check was returned due to insufficient funds in the account. Thus, the board determined respondent converted more than $50,000 in client or third party funds. Finally, in the Unauthorized Practice of Law matter, the committee did not make any factual findings regarding respondent’s representation of Jennifer Durousseau. The board found that respondent collected $7,000 from Ms. Durousseau’s ex-husband, which was to be forwarded to Ms. Durousseau. Respondent never forwarded her the funds, but she was able to recover $5,000 of this amount from the Client Assistance Fund. Based on these facts, the board determined that the committee correctly applied the Rules of Professional Conduct. However, the committee failed to address Rule 1.5(b) (Count IV only), Rule 8.1(c) (Count VII only), Rule 8.4(b) [^(Counts I—III), and Rule 8.4(a) (all counts). With respect to these alleged rule violations, the board determined respondent violated all of them. Finally, the board determined that the Rule 5.5(a) violation applies only to respondent’s representation of Dr. Mayer and Mr. Gordon because the ODC only charged respondent with this rule violation with respect to those two clients. The board determined that respondent intentionally violated duties owed to his clients, the legal system, and the legal profession. His conduct caused serious actual harm and significant potential for harm. In all, respondent converted $297,753.56 from multiple clients. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is disbarment. In aggravation, the board found the following: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. The only mitigating factor found by the board was the absence of a prior disciplinary record. After considering respondent’s conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as this court’s prior jurisprudence addressing similar misconduct, the board recommended respondent be permanently disbarred. The board further recommended that respondent be ordered to pay restitution to his clients and/or the Client Assistance Fund, as appropriate. Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation. DISCUSSION Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. Y, § 5(B). Consequently, we act as triers of fact and conduct an 1 ^independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La. 3/11/94), 633 So.2d 150. The record in this matter supports a finding that respondent neglected legal matters, failed to communicate with clients, converted client funds to his own use, allowed his client trust account to become overdrawn, practiced law after being placed on interim suspension, and failed to refund unearned fees. The record further supports a finding that respondent violated the Rules of Professional Conduct as determined by the disciplinary board. Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to. be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984). Respondent intentionally violated duties owed to his clients, the legal system, and the legal profession. He caused significant actual and potential harm. The baseline sanction for this type of misconduct is disbarment. The record supports the aggravating and mitigating factors found by the disciplinary board. | ¶ ./Turning to the issue of an appropriate sanction, we find permanent disbarment is warranted under Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines. On numerous occasions, respondent received funds on his clients’ behalf and failed to remit those funds to the clients, thereby converting client funds to his own use. Respondent was also paid to perform legal work that he either never performed or never completed. Nevertheless, he did not refund the unearned fees, which likewise constitutes a conversion of client funds. We further find that permanent disbarment is warranted under Guideline 8 (following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred). Respondent was interimly suspended from the practice of law on April 24, 2013, but he continued to accept fees and represent clients. Under these circumstances, and in order to protect the public, respondent must be permanently disbarred. Accordingly, we will adopt the disciplinary board’s recommendation and permanently disbar respondent. We will also order respondent to pay restitution to his clients and/or the Client Assistance Fund, as appropriate. ' DECREE Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Robert B. Purser, Louisiana Bar Roll number 19981, be and he hereby is permanently disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall .be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that [ ^respondent make full restitution to each of his clients subject of the formal charges, or to the Louisiana State Bar Association’s Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with- Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days-from the date of finality of this court’s judgment until paid.